Filed 5/21/14  Badalabdishoo v. Lightbourne CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| RADA BADALABDISHOO,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>WILL LIGHTBOURNE as Director, etc., et al.,<br><br>Defendants and Appellants. | F066747<br><br>(Super. Ct. No. 633157)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Stanislaus County. Timothy W. Salter, Judge.

Kamala D. Harris, Attorney General, Julie Weng-Gutierrez, Senior Assistant Attorney General, Niromi W. Pfeiffer and R. Matthew Wise, Deputy Attorneys General, for Defendants and Appellants.

Law Office of Russell A. Robinson and Russell A. Robinson for Plaintiff and Respondent.

-ooOoo-

In July 2003, the Department of Social Services (DSS) licensed Rada Badalabdishoo (Ms. B)[1] to operate a family child care home. In March 2008, Ms. B's license was suspended based on allegations that her facility was overcapacity on two occasions, she hid five children in a vehicle in her garage for 30 minutes during a DSS inspection of her facility to prevent the inspector from learning she was overcapacity, and she allowed her mother-in-law and father-in-law, who did not have criminal records clearances, to be present in the facility with the children. Following a one-day hearing before an administrative law judge (ALJ), the ALJ found the allegations true and that the appropriate discipline was revocation of Ms. B's license and her exclusion from licensed facilities. The DSS adopted the ALJ's proposed decision.

Ms. B thereafter filed a petition for writ of administrative mandate pursuant to Code of Civil Procedure section 1094.5[2] against the DSS and the Director of the DSS (collectively the Department). Two months later, Ms. B filed an ex parte application for writ of administrative mandate. The trial court denied the application and advised Ms. B's counsel to obtain a hearing date and the administrative record. A year later, Ms. B attempted to take the Department's default and have a default judgment entered, but the trial court granted the Department's motion to quash.

Over a year later, Ms. B served the petition on the Department; when they failed to respond, the clerk entered their default at Ms. B's request. Eventually, the trial court issued the Department an order to show cause (OSC) why default judgment should not be entered and set a hearing date. The Department filed a motion to quash service, on the ground that service had never been completed, and argued default judgment should not be

---

[1] We abbreviate Ms. Badalabdishoo's name to ease the reader's task. We intend no disrespect.

[2] Undesignated statutory references are to the Code of Civil Procedure.

entered because the time to respond to the petition had not expired and a writ of mandate cannot be granted without a hearing.

At the OSC hearing, the trial court denied the motion to quash and took the remaining issues under submission. Before the trial court issued its ruling, the Department filed a demurrer to the petition, contending the petition was untimely and therefore should be dismissed. The trial court subsequently issued a written ruling on the remaining issues from the OSC hearing, finding the hearing before the ALJ was fair and the determination of issues was supported by the evidence, but Ms. B's acts did not warrant the revocation and exclusion orders. The trial court thereafter "dropped" the demurrer since the Department's default had been entered.

On appeal, the Department contends the trial court was prohibited from entering judgment by default, the trial court was required to rule on the demurrer, the trial court's order directing the Department to reissue the license infringed on its discretion, and the trial court abused its discretion in failing to review the administrative record before ruling on the merits of the petition. As we shall explain, we conclude the trial court erred in directing the Department to reissue Ms. B's license and therefore reverse the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 20, 2008, Ms. B filed an unverified petition for writ of administrative mandate in the superior court. Ms. B alleged she had been licensed as a home daycare provider under a license issued by the Department in July 2003. On March 13, 2008,[3] the Department filed an accusation alleging Ms. B had violated various provisions of California law when she: (1) was overcapacity on February 13 and 28; (2) kept five children in a hot vehicle in the garage for over 30 minutes while a licensing worker conducted a complaint visit inside the facility; (3) allowed two adults who did not have the requisite clearance to assist her inside the facility; and (4) engaged in conduct

[3] Subsequent references to dates are to dates in 2008 unless otherwise noted.

3.

inimical to the health, safety, welfare or morals of either individuals in her care or the people of the State of California.

The petition further alleged that a one day hearing was held on April 17 before an ALJ; the ALJ rendered a proposed decision on April 29, indicating an intent to revoke Ms. B's license and exclude her from licensed facilities. On May 14, the Department adopted the decision as its own. On June 12, Ms. B both requested a stay of the decision and filed a petition for reconsideration. The Department denied the petition on the ground it was untimely, asserting it was required to be filed before May 14. The Department revoked Ms. B's license and ordered her exclusion from licensed facilities for at least a year from May 14.

Ms. B asserted in the petition that the decision to revoke was invalid under section 1094.5 on a number of grounds, including that (1) specific factual findings were not supported by the weight of the evidence; (2) the findings did not support the determination of the issues; and (3) the penalty imposed was arbitrary and capricious, as she did not commit the alleged acts and, even if true, the acts did not warrant the revocation and exclusion orders. Ms. B stated she had ordered a copy of the administrative record, which would be lodged with the court.

In December, Ms. B applied ex parte for a writ of administrative mandate. In her application, Ms. B asserted she had ordered a copy of the administrative record and had faxed follow-up requests to the Department on July 14, August 7 and October 29, but the record had not been lodged with the court because the Department had not cooperated in producing it. Ms. B asserted the Department abused its discretion by revoking her license, as the decision was not supported by the findings or the evidence. She asserted the weight of the evidence did not support the findings because (1) the evidence showed there were a series of errors, which were corrected, (2) no one was injured, (3) the issue resulted from poor communication, problems with a disgruntled client and misunderstandings caused by translation, and (4) there had not been any other such

4.

incidents. Ms. B argued she met her burden of producing the hearing transcript by making proper requests to the Department, which went unanswered, and it was now the Department's burden to produce the transcript.

Exhibits attached to the application included: (1) the Department's "Decision and Order" which stated that the attached proposed decision of the ALJ was adopted and "shall become effective May 14, 2008," along with a proof of service showing Ms. B was served by certified mail on May 14; (2) Ms. B's request for a complete record of the administrative proceedings pursuant to Government Code section 11523, dated June 12 and filed-stamped by the Office of Administrative Hearings (OAH) on June 16; (3) a petition for reconsideration dated June 12, file stamped by the OAH on June 16; (4) copies of an OAH transcript order form along with a June 23 check from Ms. B's attorney made payable to OAH; (5) a June 25 letter from the Department to Ms. B's attorney, stating the Department lacked jurisdiction to consider the petition for reconsideration because its power to entertain reconsideration ended on the effective date of the decision, May 14; and (6) three letters dated July 14, August 7, and October 29 from Ms. B's attorney to the Department asking for the administrative record.

The hearing on the ex-parte application was held on December 16. Attorneys for Ms. B and the Department both appeared. A minute order of the hearing states that the court denied the ex-parte application for writ of administrative mandate and advised Ms. B's counsel "to obtain a date for hearing and to get a record." That same day, Ms. B's verification of the petition was filed.

One year later, on December 7, 2009, proofs of service of summons were filed, showing the DSS was personally served by a registered process server on December 15, 2008 and the Director was personally served via the deputy attorney general by Ms. B's attorney on December 16, 2008. Also filed was Ms. B's request for entry of default, as well as Ms. B's attorney's declaration in support of the default request. The court clerk entered default as requested that day.

5.

On December 30, 2009, the trial court issued the Department an OSC why the court should not enter default judgment against the Department and grant Ms. B the relief requested; the hearing was set for February 11, 2010. In response, the Department filed a motion to quash service of the writ and OSC, arguing the court lacked personal jurisdiction over the Department because Ms. B failed to properly serve them. The Department also argued that a default judgment should not issue because a writ may not be resolved by default judgment; instead, Ms. B was required to serve the petition on the Department and set a noticed motion, which she had not done, and if the Department failed to respond, the court could determine the writ based on the documents submitted. Ms. B submitted written opposition to the motion.

On February 11, 2010, Ms. B and her attorney appeared at the hearing, but the trial court refused to hear argument, stating that a tentative ruling to grant the motion to quash had been posted, which Ms. B's attorney had not challenged. Ms. B then filed an ex parte application for order shortening time within which to hear Ms. B's motion for reconsideration. The Department filed several declarations in opposition. At the February 18, 2010 hearing, the trial court denied the application.

Over two years later, on August 1, 2012, Ms. B filed two proofs of service in which a registered California process server declared that he served the petition on the DSS and its Director by personally serving Darryl East, Assistant Chief Counsel, on October 21, 2011 at 2:15 p.m. Ms. B also filed a request for entry of default, in which she requested the Department's defaults be entered and declared that a copy of the request was mailed to the Department on January 31, 2012. The court clerk entered default as requested on August 1, 2012.

The next day, the trial court set a hearing on the default for August 23, 2012. Ms. B submitted a trial brief for the August 23 hearing, in which she argued the merits of her petition. Specifically, she argued the decision to revoke her license and exclude her was unreasonable and without cause. She asserted the penalty imposed was arbitrary and

capricious because the acts alleged, even if true, did not warrant the revocation and exclusion orders. She requested the issuance of a peremptory writ of mandate pursuant to section 1094.5, compelling the Department to set aside its decision, and to recover $495,606.65 in damages comprised of lost income and interest thereon. At the August 23 default hearing, attended only by Ms. B and her attorney, the trial court noted that Ms. B's attorney did not have the administrative record. The court took the matter under submission upon the attorney's filing of a post-hearing brief. An exhibit list shows that the decision and order, license and tax returns were received as evidence.

In Ms. B's post-hearing brief filed on August 27, 2012, she argued that (1) the Department should be foreclosed from relying on the administrative record because it failed to respond to her requests to produce it; (2) since the Department has defaulted, it may not object to the entry of judgment; and (3) she is entitled to damages due to lost earnings. Attached as exhibits were (1) a request for a complete record of the administrative proceedings pursuant to Government Code section 11523, dated June 12, 2008 and file-stamped by the OAH on June 16, 2008; and (2) copies of an OAH transcript order form along with a June 23, 2008 check from Ms. B's attorney made payable to OAH.

On October 12, 2012, the trial court issued a "Request for Declaration" directing Ms. B's attorney to submit a declaration signed under penalty of perjury setting forth the date on which her request for reconsideration was filed. The court calendared a hearing for November 28, 2012. That same day, the trial court issued an OSC to the Department, stating that they were ordered to show cause on November 28, 2012, why the court should not enter a default judgment against the them and grant the relief requested in the petition filed on October 20, 2008.

In response, the Department filed a motion to quash service of the writ based on a lack of personal jurisdiction and to dismiss the OSC. The Department argued default judgment should not be entered because (1) neither it nor the Director was properly

7.

served with the petition, (2) the time to respond to the petition had not lapsed as the administrative record had not been filed and the Department had not been served, and (3) a contested writ of mandate may not be granted without a hearing. In support, the Department filed a declaration from R. Matthew Wise, a deputy attorney general with the Attorney General's office, which stated that Deputy Attorney General Elizabeth Linton attended the ex parte hearing on February 18, 2010, and thereafter mailed Ms. B's attorney a letter summarizing the discussion both counsel had with the trial judge in his chambers, which laid out an agreement that the Attorney General's Office would accept service for the Department by mail in conformance with section 415.30. Wise declared that since the February 18, 2010 hearing, Ms. B had not served that office with the petition or any other documents in the case, and he contacted Darryl East, Assistant Chief Counsel for the Department on October 24 and November 7, 2012, who confirmed his office had not been served with the petition or any other documents.

In written opposition, Ms. B asserted, inter alia, that (1) the Department could not move to quash because the court acquired personal jurisdiction over the Department when they were served on October 20, 2011 through their authorized agent, East, and default had been entered; (2) the purported statements of East are hearsay and should be stricken; and (3) the Department waived their right to contest entry of judgment. In a declaration, Ms. B's attorney stated he sent Linton the petition and summons, with acknowledgement of receipt, in June 2010; since he never heard back from her, he had the pleadings served personally in October 2011.

On November 26, 2012, Ms. B's attorney filed his declaration in which he stated that (1) immediately after being retained in the case, he drafted several documents, including a notice of defense, request for administrative record and petition for reconsideration from the May 14, 2008 decision to revoke; (2) on June 12, 2008, he personally mailed the petition for reconsideration to the OAH, East, and the Senior Assistant Chief Counsel; (3) he also successfully faxed the petition for reconsideration on

8.

June 12, 2008; and (4) on June 16, 2008, the Department acknowledged receipt of the three documents.

Wise appeared at the November 28, 2012 hearing on behalf of the Department; Ms. B also appeared with her attorney.[4] Wise submitted a declaration from East, in which East set forth the Department's procedure for accepting service of petitions for writ of mandamus. Wise stated that a packet of documents, which included the petition filed on October 20, 2008, arrived at the Department on October 20, 2011, but there was no indication they had been served or accepted according to those procedures. East had no recollection of personally accepting service on that date. According to the minute order of the hearing, upon conclusion of oral arguments the trial court denied the motion to quash service of the writ, and took the remaining issues under submission, stating it would issue a minute order ruling.

The Department subsequently filed a demurrer to the petition, dated December 20, 2012, with a hearing date of February 5, 2013. The Department asserted the petition was barred by the statute of limitations set out in Government Code section 11523, as the petition was filed over four months after the applicable limitations date and the administrative record was not requested within the statutory time period, therefore the petition failed to allege sufficient facts to constitute a cause of action.

On December 27, 2012, the trial court issued a written "Ruling on Petition for Writ of Administrative Mandate." After reiterating its denial of the motion to quash, the court stated that after considering the arguments and pleadings presented by Ms. B, it issued its decision as follows: "The Court finds that the hearing conducted by the Administrative Law Judge was fair, and that the determinations of issues were supported

---

[4] According to the Department, there is no reporter's transcript of the hearing because it was not recorded or transcribed. The Department did not seek to use an agreed or settled statement to show what occurred at the hearing, which it was empowered to do by California Rules of Court, rules 8.130(h) and 8.137.

by the evidence. However, the Court finds that the acts of [Ms. B] did not warrant revocation and exclusion orders. The Court does not find that [the Department] acted in an arbitrary or capricious manner, and therefore, no damages or attorney fees are awarded. [¶] Therefore, let a Writ of Mandate issue, requiring [the Department] to vacate its revocation of [Ms. B]'s license, and reverse its order of exclusion. [The Department] shall re-issue a license to [Ms. B] equal to the one she previously held." Ms. B's attorney served notice of entry of the order on the Department on December 31, 2012.

On January 24, 2013, Ms. B filed an opposition to the demurrer, in which she argued the demurrer was improper as the Department was in default, the court had issued its order granting the petition and the demurrer raised factual issues without support.

On February 5, 2013, the trial court confirmed its tentative ruling that the demurrer be "dropped as [the Department's] default has been entered[,]" since no one requested a hearing or appeared. This appeal followed.

## DISCUSSION

The Department raises several contentions as to why the trial court's order should be vacated. We begin, however, with its contention that the order must be vacated because the trial court's order directing the Department to reissue the license infringed on its discretion.

A peremptory writ may not be granted by default. (§ 1088.) Thus, a court must hear a petition for administrative mandate even when the adverse party fails to respond or appear. (*Rodriguez v. Municipal Court* (1972) 25 Cal.App.3d 521, 526.) The case is heard on the basis of the documents submitted by the petitioner. (§ 1094 ["If no return be made, the case may be heard on the papers of the applicant."]; *Lewis v. Superior Court* (1999) 19 Cal.4th 1232, 1250-1251.) The petition's material facts alleged are deemed admitted (*Tringham v. State Bd. Of Educ.* (1955) 137 Cal.App.2d 733, 735-736), and only legal issues remain for decision. (*Coppinger v. Superior Court* (1982) 134 Cal.App.3d 883, 885.) Even if unopposed, a petition for writ of administrative

10.

mandamus will not be granted unless it sets forth grounds warranting relief. (*McPheeters v. Board of Medical Examiners* (1947) 82 Cal.App.2d 709, 716.)

Here, a hearing was held on November 28, 2012, after which the trial court essentially decided, based on arguments and Ms. B's pleadings, that the ALJ's findings of misconduct were supported by the evidence, but the revocation of Ms. B's license and her exclusion from licensed facilities was not an appropriate penalty for the misconduct. The parties disagree as to the purpose of this hearing – the Department asserts it was not a hearing on the petition as required by section 1088, while Ms. B contends it was. Based on the trial court's written ruling, it appears it considered the petition's merits at the OSC hearing and thereafter issued its decision on it. Since we do not have a record of what occurred at the hearing, we presume the trial court performed its duty and held the hearing as required under section 1088. (*Ross v. Superior Court* (1977) 19 Cal.3d 899, 913-914; *Interinsurance Exchange v. Collins* (1994) 30 Cal.App.4th 1445, 1448 ["Appellant must affirmatively show error by an adequate record; error is never presumed."].)

While the trial court made its decision without the administrative record and based only on the petition and the Department's decision and order, Ms. B contends the court had the power to render its decision without it. Specifically, Ms. B asserts that as section 1094.5, subdivision (a) provides that "[a]ll or part of the record of the proceedings before the inferior tribunal . . . may be filed . . . " with the court, and she attempted to obtain the record but received no cooperation from the Department, the trial court had discretion "to find that exceptional circumstances justified a ruling on the merits with the limited record available" to it. The Department responds that the trial court did not find that exceptional circumstances existed or inquire as to why Ms. B had not submitted the administrative record, pointing to the court's December 27, 2012 written ruling which is silent on those issues. But as we have already noted, without a record of the hearing, we presume the trial court made the requisite findings and determined that it could, in fact, proceed on the

11.

record before it when examining the issue of whether the ALJ's findings supported the decision.

The issue then is whether the trial court erred in finding, based on the record before it, that Ms. B's acts "did not warrant revocation and exclusion orders." When the trial court has concluded that an agency properly found misconduct, "the imposition of the appropriate penalty for that misconduct is left to the sound discretion of the agency." (*Kazensky v. City of Merced* (1998) 65 Cal.App.4th 44, 53 (*Kazensky*).) "'The penalty imposed by an administrative body will not be disturbed in mandamus proceedings unless an abuse of discretion is demonstrated.' [Citation.] 'Neither an appellate court nor a trial court is free to substitute its discretion for that of the administrative agency concerning the degree of punishment imposed.'" (*Ibid.*) This principle of judicial review applies even when the trial court exercises its independent judgment on the evidence in determining whether the agency abused its discretion in finding misconduct. (*Ibid.*)

As the *Kazensky* court further explained, the trial court "'is not free to substitute its opinion for that of the administrative body as to an appropriate disciplinary measure.' [Citation.] 'The appellate court's review of the degree of discipline imposed . . . remains the same as that appropriate to the trial court: The discipline imposed will not be disturbed unless it is shown to have been a manifest abuse of discretion.' [Citation.] 'Neither a trial court nor an appellate court is free to substitute its discretion for that of an administrative agency concerning the degree of punishment imposed.' [Citation.] 'In reviewing the exercise of this discretion we bear in mind the principle "[c]ourts should let administrative boards and officers work out their problems with as little judicial interference as possible . . . Such boards are vested with a high discretion and its abuse must appear very clearly before the courts will interfere."' [Citations.] In determining whether an agency abused its discretion in assessing a particular penalty, a court will look to 'whether reasonable minds may differ as to the propriety of a penalty imposed.' [Citations.] Judicial interference with the agency's assessment of a penalty 'will only be

12.

sanctioned when there is an arbitrary, capricious or patently abusive exercise of discretion by the administrative agency.'" (*Kazensky*, *supra*, 65 Cal.App.4th at p. 54.)

If the trial court finds a manifest abuse of discretion, it may vacate, but not modify, the agency's determination of penalty. (*Deegan v. City of Mountain View* (1999) 72 Cal.App.4th 37, 45-46.) "The appellate court conducts a de novo review of the penalty assessed, giving no deference to the trial court's determination. Again, the appellate court reviews the agency's selection of penalty and, if reasonable minds could differ with regard to the propriety of the disciplinary action, it finds no abuse of discretion." (*Id.* at p. 46.)

Here, Ms. B was licensed for a maximum capacity of 12 children, with no more than four being infants, or, in the alternative, 14 children with at least one being six years of age or older and no more than three being infants. The maximums were permitted only if an assistant was present. When Ms. B was the only caregiver, the capacity limitation was eight children. The ALJ found Ms. B violated the capacity limitation when she had 16 children in her care on February 13, 2008.

The ALJ further found that when the Department's licensing program analyst arrived to inspect Ms. B's facility on February 28, 2008, she found 15 children in Ms. B's care and that her mother-in-law, who did not have a criminal records clearance, was assisting her. While the analyst was there, Ms. B's father-in-law, who did not have a criminal records clearance, and her husband picked five children up from school. When they returned to the home with the children at around 4 p.m., there were still 10 or 11 children in the home, which meant she was overcapacity by one or two children. In order to prevent the analyst from knowing Ms. B was again overcapacity, Ms. B's husband left his father and the five children in the van in the garage with the garage door closed, went into the house, spoke with the analyst, then went back to the van and brought one of the children into the house, leaving his father and the remaining four children in the van until after the analyst left at about 4:30 p.m. Two of the children were Ms. B's biological

13.

children, while the other two were children in her care.  The mother of those two children filed a complaint with the Department.  When the Department investigated the complaint, Ms. B acknowledged the children had been left in the van, but claimed they were there for only five minutes and only because they were playing, jumping and making noise.

Based on these factual findings, the ALJ found there were grounds to suspend or revoke Ms. B's license pursuant to Health and Safety Code section 1596.885, subdivision (a),[5] and to exclude her from licensed facilities pursuant to Health and Safety Code section 1596.8897, subdivision (a)(1),[6] based on her being overcapacity in violation of California Code of Regulations, title 22, section 102416.5, subdivision (a),[7] violating the children's right to receive comfortable accommodations, as required by California Code of Regulations, title 22, section 102423, subdivision (a)(2),[8] and having her mother-in-

---

[5] Health and Safety Code section 1596.885 provides, in pertinent part, that:  "The department may . . . suspend or revoke any license . . . issued under this act upon any of the following grounds and in the manner provided in this act: [¶] "(a) Violation by the licensee . . . of the rules promulgated under this act. [¶'s] . . . (c) Conduct which is inimical to the health, morals, welfare, or safety of either an individual in or receiving services from the facility or the people of this state. . . ."

[6] Health and Safety Code section 1596.8897 provides, in pertinent part:  "(a) The department may prohibit any person from being a member of the board of directors, an executive director, or an officer of a licensee or a licensee from employing, or continuing the employment of, or allowing in a licensed facility, or allowing contact with clients of a licensed facility by, any employee, prospective employee, or person who is not a client who has: [¶]  (1) Violated, or aided or permitted the violation by any other person of, any provisions of this chapter or of any rules or regulations promulgated under this chapter. [¶]  (2) Engaged in conduct that is inimical to the health, morals, welfare, or safety of either an individual in or receiving services from the facility, or the people of the State of California. . . . "

[7] California Code of Regulations, title 22, section 102416.5, subdivision (a) provides: "The capacity specified on the license shall be the maximum number of children for whom care can be provided."

[8] California Code of Regulations, title 22, section 102423, subdivision (a)(2) provides:  "(a) Each child receiving services from a family child care home shall have certain rights that shall not be waived or abridged by the licensee regardless of consent or

14.

law act as her assistant in providing care to the children and allowing her father-in-law to be left alone with the children when neither had a criminal records clearance, in violation of California Code of Regulations, title 22, section 102370, subdivision (d)[9] and Health and Safety Code section 1596.871, subdivision (b). The ALJ further found there were grounds to suspend or revoke Ms. B's license pursuant to Health and Safety Code section 1596.885, subdivision (c) and to exclude her from licensed facilities pursuant to Health and Safety Code section 1596.8897, subdivision (a)(2), as Ms. B's conduct in leaving the children in the van and allowing her in-laws to assist with the children was inimical to the health, morals, welfare or safety of the children in care or the people of the State of California.

In determining the appropriate penalty for this misconduct, the ALJ explained that while Ms. B's repeated acts of being overcapacity and permitting her mother-in-law to provide care to children were "very troubling[,]" if those were the only violations, it might be appropriate to place Ms. B's license on probation subject to appropriate conditions. The ALJ found, however, the appropriate discipline was license revocation and exclusion from licensed facilities because "leaving children in a van in a garage for 30 minutes in order to deceive one of the department's program analysts is completely at odds with [Ms. B]'s obligation to provide comfortable accommodations for children in care." Accordingly, the ALJ revoked her license to operate a family child care home and

authorization from the child's authorized representative. These rights include, but are not limited to, the following: [¶'s ] . . . (2) To receive safe, healthful, and comfortable accommodations, furnishings, and equipment. . . . "

[9] California Code of Regulations, title 22, section 102370, subdivision (d), requires all individuals subject to a criminal record review pursuant to Health and Safety Code section 1596.871 to obtain a California clearance or criminal record exemptions as required by the Department. Health and Safety Code section 1596.871, subdivision (b), requires persons who provide care and supervision to the children, or a staff member, volunteer or employee who has contact with the children, to obtain a criminal record clearance.

15.

excluded her from employment and presence in any facility licensed by the Department, and from having contact with clients of any such facility.

Based on the facts found by the ALJ, there was no abuse of discretion in deciding that license revocation and exclusion were the appropriate penalties for Ms. B's misconduct. The ALJ reasonably could conclude that, while being overcapacity and allowing individuals without criminal records clearance to help with the children were offenses that could be supervised and regulated during a probation period, Ms. B's poor character and lack of judgment, as demonstrated by her attempt to deceive the Department at the expense of the children in her care, could not. In this situation, we cannot find a patently abusive exercise of discretion.

In sum, we agree with the Department that the trial court improperly substituted its judgment for that of the Department and conclude the Department did not abuse its discretion when it revoked Ms. B's license and excluded her from licensed facilities based on her misconduct. Accordingly, the trial court erred when it found the penalty imposed was not warranted and issued a writ of mandate requiring the Department to vacate its revocation of Ms. B's, reverse its order of exclusion, and reissue Ms. B's license. Since Ms. B's petition fails on its merits, we do not decide the procedural issues the Department raises regarding the trial court's ability to enter default and whether it was required to rule on the Department's demurrer.

16.

## **DISPOSITION**

The judgment is reversed. The case is remanded to the trial court with directions to deny respondent's petition for writ of administrative mandamus and enter judgment in favor of the DSS and its Director. Costs on appeal are awarded to appellants.

_____
Gomes, J.

WE CONCUR:


_____
Cornell, Acting P.J.


_____
Detjen, J.